UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NICOLE BUSH, as Administrator of the
Estate of Bruce A. Bush; MICHELE L.
CRANE, as Administrator of the Estate of
Douglas K. Crane; CONNIE DRAKE,
Individually as Surviving Spouse and as
Administrator of the Goods, Chattels and
Credits of Glenard W. Drake, Jr.; and
SHARON MARIE HAMILTON, as Guardian
of the Infants of Terry Singh and as
Proposed Administrator of the Estate of
Terry Singh,

      Plaintiffs,

 -v-             6:12-CV-1444

CITY OF UTICA, NEW YORK; CITY OF
UTICA FIRE DEPARTMENT; and
RUSSELL BROOKS, Chief of City of Utica
Fire Department, in his Official and
Individual Capacity,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:         OF COUNSEL:

DREYER BOYAJIAN, LLP     DONALD W. BOYAJIAN, ESQ.
Attorneys for Plaintiffs       JOHN J. DOWD, ESQ.
75 Columbia Street
Albany, NY 12210

OFFICE OF CORPORATION COUNSEL— JOHN P. ORILIO, ESQ.
 CITY OF UTICA         ZACHARY C. OREN, ESQ.
Attorneys for Defendants
One Kennedy Plaza
Utica, NY 13502


DAVID N. HURD
United States District Judge

# MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

This civil rights action arises from a fatal fire that occurred on September 20, 2009, at 102 James Street in Utica, New York. Bruce Bush, Douglas Crane, Glenard Drake, Jr., and Terry Singh (collectively "decedents") perished in the fire. Plaintiffs Nicole Bush, as administrator of Bruce Bush's estate ("Bush"); Michele Crane, as administrator of Douglas Crane's estate ("Crane"); Connie Drake, as the surviving spouse of and administrator of the goods, chattels, and credits of Glenard Drake ("Drake"); and Sharon Marie Hamilton, as guardian of the infants of Terry Singh and proposed administrator of Terry Singh's estate ("Hamilton") (collectively "plaintiffs") filed this action on September 19, 2012.

Plaintiffs bring federal and state claims against defendants the City of Utica ("the City"); the City of Utica Fire Department ("UFD")[1]; and UFD Chief Russell Brooks ("Chief Brooks") (collectively "defendants"). The federal claims, brought pursuant to 42 U.S.C. § 1983, include an alleged deprivation of substantive due process (First Cause of Action), a violation of equal protection (Second Cause of Action), and a failure to train and/or supervise Monell claim (Third Cause of Action).[2] The state claims include wrongful death claims (Fifth and Sixth Causes of Action), pain and suffering (Seventh Cause of Action), and negligence/gross negligence (Eighth Cause of Action).

Defendants have filed a motion to dismiss the complaint pursuant to Federal Rule of

---

[1] As the City and the UFD are essentially the same municipal entity, they will be consolidated for purposes of this action. The Clerk of the Court is directed to remove the City of Utica Fire Department from the caption.

[2] Plaintiffs also delineate a separate claim for attorneys' fees pursuant to § 1988 (Fourth Cause of Action).

- 2 -

Civil Procedure 12(b)(1), (6), and (7). Plaintiffs have responded in opposition, and defendants replied. The motion was considered on submit, with no oral argument.

## II. **FACTUAL BACKGROUND**

The following facts, taken from the complaint, are assumed true for purposes of the motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

During the relevant time period decedents resided as tenants in four separate apartments in the rear of 102 James Street in Utica ("the residence"). Prior to September 2009, employees of the City inspected the residence and found the smoke detectors, fire alarm, and sprinkler system to be inoperable and, therefore, in violation of City building codes and state law. Further, the owners of the residence failed to register it in accordance with the City's Rental Dwelling Inspection Law.

The City had numerous contacts with tenants of the residence regarding these code violations. Representatives of the City advised the tenants, including decedents, that the City would ensure the owners rectified the violations. In April 2008 the City commenced a civil proceeding to force the owners to register the residence pursuant to the Rental Dwelling Inspection Law. On June 23, 2008, a court order was entered directing the owners to so register the residence within ten days. However, the City did not enforce this order, and the owners did not register the residence.

On September 20, 2009, the residence caught fire, and numerous emergency calls were made to summon the UFD. Some of these calls were placed by decedents from inside the residence. During these phone calls decedents were advised—presumably by 9-1-1 operators—that help was on the way. Decedents were also directed to stay where they were in the residence and get to a window if possible. The UFD arrived on scene but did not

implement appropriate firefighting techniques to rescue decedents, who were known to be trapped inside the rear apartments of the residence. The rear apartments were readily accessible through a rear stairwell, which was not consumed by fire or smoke. Members of the UFD physically prevented bystanders, including decedents' family members and friends, from entering the burning residence in an attempt to rescue decedents. Specifically, UFD members stopped and restrained a citizen bystander—clad only in a T-shirt and shorts—after he entered the rear stairwell and proceeded to the second floor landing, which was near all four decedents' respective apartments.

While on scene, Chief Brooks reportedly told bystanders that he "was not going to risk the lives of any members of the Department for individuals who resided on James Street." Compl. ¶ 52. This reflected a general "don't go in policy" that guides the UFD's response to all fires occurring in low-income housing properties in the City. Id. ¶ 73.

All four decedents ultimately perished in the fire as a result of smoke inhalation and thermal burns. Thereafter, defendants failed to conduct a thorough and proper investigation into the cause of the fire and the UFD's response. Such an investigation was hindered by an unwritten "code of silence," by which members of the UFD refuse to discuss what efforts, or lack thereof, are used to combat fires in low-income neighborhoods. Id. ¶ 77.

The following facts, although not included in the complaint, are noted for purposes of defendants' jurisdictional challenge. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (a court may consider evidence outside the pleadings when considering a motion to dismiss for lack of subject matter jurisdiction).

On December 16, 2010, plaintiffs Bush and Crane, as administrators of the estates of Bruce Bush and Douglas Crane respectively, filed a complaint in New York State Supreme

Court, Oneida County. These two plaintiffs brought claims for wrongful death and pain and suffering against the City and Timothy and Richard Klotz, the owners of the residence ("the Klotzes"). Similarly, on December 17, 2010, Drake filed a complaint in the Supreme Court, Oneida County, as surviving spouse of Glenard Drake and administrator of his goods, chattels, and credits. Drake asserted wrongful death and pain and suffering claims against the City.

## III. DISCUSSION

Defendants seek dismissal of the complaint pursuant to Rule 12(b)(6) for the following reasons: (1) the alleged federal civil rights violations are merely state tort claims; (2) there is no affirmative duty to provide firefighting services upon which to base the substantive due process claim or, in the alternative, their conduct was not conscience-shocking; (3) there is insufficient allegations of discrimination to state an equal protection claim or, in the alternative, there was a rational basis for defendants' conduct; (4) Chief Brooks is entitled to qualified immunity; (5) the state claims are all untimely; and (6) plaintiff Hamilton does not have standing to assert claims as "proposed" administrator of Terry Singh's estate. Defendants also argue that plaintiffs failed to join necessary parties, and the complaint must therefore be dismissed pursuant to Rule 12(b)(7). Finally, defendants maintain that the Younger doctrine requires abstention in light of the pending state court actions.[3]

Plaintiffs concede that the pendent state claims brought by Bush, Crane, and Drake

---

[3] As defendants have not identified any specific argument upon which to base their Rule 12(b)(1) motion to dismiss, it is assumed that they suggest the Younger abstention doctrine implicates subject matter jurisdiction.

are untimely.[4] Plaintiffs also acknowledge that Hamilton has not been appointed as administrator of Terry Singh's estate. Only a duly appointed "personal representative" of a decedent can bring an action "to recover damages for a wrongful act, neglect or default which caused the decedent's death." N.Y. EST. POWERS & TRUSTS LAW § 5-4.1(1); Mingone v. State, 100 A.D.2d 897, 899 (N.Y. App. Div. 2d Dep't 1984) (dismissing, without prejudice, wrongful death and personal injury claims because plaintiff was not "the personal representative of the decedent's estate at the time the summons was served"). "A personal representative is a person who has received letters to administer the estate of a decedent." N.Y. EST. POWERS & TRUSTS LAW § 1-2.13. This state law also governs a party's standing to assert federal civil rights claims on behalf of a decedent. See FED. R. CIV. P. 17(b)(1); Johnson v. Morgenthau, 160 F.3d 897, 898 (2d Cir. 1998) (per curiam). As Hamilton is admittedly not a duly appointed personal representative of Terry Singh, she may not assert claims on behalf of Ms. Singh's estate.

Accordingly, the state claims (Fifth, Sixth, Seventh, and Eighth Causes of Action) and all claims brought by Hamilton will be dismissed.[5] Therefore, only the three federal claims (First, Second, and Third Causes of Action) brought by Bush, Crane, and Drake remain for consideration.

### A. Younger Abstention Doctrine

Whether the Younger abstention doctrine applies is a "threshold question" to be resolved prior to addressing the merits of plaintiffs' claims. Tenet v. Doe, 544 U.S. 1, 6 n.4,

---

[4] Indeed, the statute of limitations is two years for the wrongful death claims and one year and ninety days for the personal injury claims. N.Y. GEN. MUN. LAW § 50-i(c). This action was filed almost three years after the fire. The parties dispute the timeliness of the state claims brought by Hamilton.

[5] The Clerk of the Court is directed to remove Sharon Marie Hamilton from the caption.

- 6 -

125 S. Ct. 1230, 1235 n.4 (2005); Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90 (2d Cir. 2004).

A district court has a "virtually unflagging" obligation to adjudicate claims within its jurisdiction. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 358–59, 109 S. Ct. 2506, 2513 (1989) (abstention "remains the exception, not the rule" (internal quotation marks omitted)). Under Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971), federal courts—in the interest of comity, deference, and judicial economy—"must abstain from enjoining pending state court criminal prosecutions and allow state courts to resolve pending matters within their jurisdiction." Washington v. Cnty. of Rockland, 373 F.3d 310, 318 (2d Cir. 2004). This abstention doctrine has been extended to state civil and administrative proceedings. Id.

Abstaining from the exercise of jurisdiction is only proper where: "1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." Liberty Mut. Ins. Co. v. Hurlbut, 585 F.3d 639, 647 (2d Cir. 2009) (internal quotation marks omitted).

Federal courts have drawn a distinction between state actions that are "coercive" and those that are "remedial" in nature, applying the Younger doctrine to coercive actions only. See N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York, __ F. Supp. 2d __, 2012 WL 6019572, at *14 (N.D.N.Y. 2012); Donohue v. Mangano, 886 F. Supp. 2d 126, 144–47 (E.D.N.Y. 2012). In a coercive action, a state entity initiates an enforcement action against a citizen who does not have a choice but to participate in the state action. N.Y. State Corr. Officers, 2012 WL 6019572, at *14. The typical Younger doctrine scenario involves a citizen defendant in a coercive state action who subsequently files a federal action seeking to

enjoin or challenge the state enforcement action. Id.; see also Local 749 v. Ment, 945 F. Supp. 30, 34 (D. Conn. 1996) ("The Younger doctrine presumes that the federal action would interfere with ongoing state proceedings since, typically, the federal plaintiff's object in filing the federal action is either to seek an injunction against state proceedings themselves or to challenge the law applied in those proceedings.").

Conversely, a remedial state action is initiated by an individual citizen seeking a remedy for perceived wrongful action by the state. N.Y. State Corr. Officers, 2012 WL 6019572, at *14. Such actions are outside the reach of the Younger doctrine. See Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc., __ F. Supp. 2d __, 2013 WL 673740, at *12 (E.D.N.Y. 2013) ("[T]he Younger abstention doctrine is . . . inapplicable because the parallel state proceeding at issue here is remedial, not coercive.").

The state court actions filed by Bush, Crane, and Drake are remedial in nature. They are not state criminal prosecutions or civil enforcement proceedings. These three plaintiffs are also plaintiffs, not defendants, in the state court actions. They are not seeking to enjoin or challenge the state proceedings through this federal action. Moreover, the only remaining claims in this action are federal claims that "are of a wholly different character" than the claims asserted in the pending state actions. See Washington, 373 F.3d at 319. Here, plaintiffs allege that defendants discriminated against decedents and failed to implement proper firefighting techniques because decedents lived in a low-income area. This presents different facts and legal standards than the wrongful death and pain and suffering claims pending in state court.

Accordingly, the Younger abstention doctrine is inapplicable in this context.

### B. Defendants' Rule 12(b)(6) Motion to Dismiss

#### 1. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(a)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009). Dismissal is appropriate only where plaintiffs have failed to provide some basis for the allegations that support the elements of their claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiffs' favor. Chambers, 282 F.3d at 152.

#### 2. Fourteenth Amendment

Defendants maintain that the civil rights claims asserted under the Fourteenth Amendment must be dismissed because they are merely state law negligence claims. In support of this argument, defendants rely on Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662 (1986), which held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Id. at 328, 106 S. Ct. at 663. Indeed, the Constitution does not "supplant traditional tort law." Id. at 332, 106 S. Ct. at 665.

Plaintiffs allege more than mere negligence on the part of defendants.  Indeed, they allege that defendants deliberately, or at least recklessly, chose not to implement proper firefighting techniques, prevented private rescue attempts, and failed to rescue decedents due to discriminatory animus.  This distinguishes this matter from the situation in Daniels where a government employee created an unsafe condition in a prison by negligently leaving a pillow on a stairwell.  Id.  The Daniels Court drew this very distinction, noting that the Due Process Clause of the Fourteenth Amendment has historically been applied to "deliberate decisions of government officials to deprive a person of life, liberty, or property"—not merely negligent conduct.  Id. at 331, 106 S. Ct. at 665.  Plaintiffs allege that defendants' conduct on September 20, 2009, was deliberate.  Therefore, Daniels is not a bar to plaintiffs' federal claims.

### 3. Substantive Due Process (First Cause of Action)

Defendants argue that the substantive due process claim must be dismissed because there is no affirmative duty to provide adequate firefighting services or, in the alternative, their conduct was not conscience-shocking.  In response, plaintiffs have clarified that "[r]ather than asserting that the Defendants violated their due process rights by failing to provide adequate fire services, Plaintiffs are arguing that their constitutional rights were violated when the Defendants arbitrarily and affirmatively cut off attempts made by private parties to rescue Decedents without providing a meaningful alternative of rescue."  Pls.' Mem. of Law, ECF No. 14, 5–6.[6]

---

[6] Thus, plaintiffs tacitly concede what numerous federal courts have held—the Constitution does not create an affirmative entitlement to fire protection for due process purposes.  See, e.g., Jackson v. Byrne, 738 F.2d 1443, 1446 (7th Cir. 1984); Estate of Morgan v. Mayor of Hampton, 936 F. Supp. 343, 347–48 (E.D. Va. 1996); Westbrook v. City of Jackson, 772 F. Supp. 932, 935–36 (S.D. Miss. 1991).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This language restricts a state's exercise of authority; it does not require a state to affirmatively protect the life, liberty, and property of its citizens. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195–96, 109 S. Ct. 998, 1003 (1989). Voluntarily undertaking to protect its citizens from danger it had no part in creating may impose a duty on the state to act reasonably for purposes of state tort law, but such does not create liability under the Due Process Clause. Id. at 201–02, 109 S. Ct. at 1006. There are two exceptions to this general principle.

First, a state may be constitutionally obligated to protect a victim from private violence if there is a "special relationship" between the state and that victim. Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008). This exception contemplates an affirmative duty owed to individuals who have been taken into custody by the state (i.e. incarcerated prisoners, involuntarily committed mental patients). Id. at 156. Such a duty arises from the state's act of restraining the individuals' freedom. Id.; see also DeShaney, 489 U.S. at 200, 109 S. Ct. at 1005–06 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.").

The second exception, referred to as the "state-created danger principle," imposes a similar obligation to protect a victim if the state or its agents "assist in creating or increasing the danger that the victim faced at the hands of a third party." Matican, 524 F.3d at 157. The application of this exception has been limited to conduct that is "affirmative," not merely "passive." Id. For example, the exception applies where police officers encourage an off-

duty colleague to binge drink and then drive. Id. (citing Pena v. DePrisco, 432 F.3d 98, 110–11 (2d Cir. 2005)). But it does not create liability where officers fail to advise a confidential informant that the drug dealer he helped put in prison had been released. Id. at 157–58 ("This is so notwithstanding [the informant]'s assertion that the officers promised to protect him.").

Even if one of these exceptions applies, a plaintiff must also show that the state's conduct "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 155 (internal quotation marks omitted). Conscience-shocking conduct is typically intentional, not merely negligent. Id. at 158. As for conduct that lies somewhere between intentional and negligent, there is little guidance as to what constitutes conscience-shocking behavior. Id. However, "harm inflicted recklessly or with deliberate indifference does not shock the conscience in the context of a time-sensitive emergency." Id. Indeed, government officials who must quickly allocate risk among "competing obligations" should not be subjected to "broad constitutional liability." Id. (internal quotation marks omitted). This final requirement "screens out all but the most significant constitutional violations, lest the Constitution be demoted to a font of tort law." Id. at 155 (internal quotation marks and alteration omitted).

Plaintiffs do not specify which exception they seek to invoke. However, they rely heavily on Ross v. United States, 910 F.2d 1422 (7th Cir. 1990), which implicated the state-created danger principle based on a government official's act of preventing a rescue attempt.[7] Indeed, reliance on the "special relationship" exception would be misplaced as

---

[7] Plaintiffs do not identify any binding case law from the Second Circuit or the United States Supreme Court adopting the rule in Ross that a government official's prevention of a private rescue creates an
(continued...)

- 12 -

decedents were not in the custody of the state in any manner on September 20, 2009. The 9-1-1 operator's instruction to stay where they were and get to a window does not establish a custodial or otherwise "special" relationship. Although defendants were aware of decedents' predicament and advised they would help them, there are no allegations that any government official restrained decedents' freedom or prevented them from acting on their own behalf. Therefore, only the state-created danger exception applies.

Plaintiffs allege that by actively preventing private parties from rescuing decedents, defendants increased the danger and were thus obligated to provide an alternative means of rescue.[8] The assertion that defendants' conduct increased the danger to decedents is completely speculative. Indeed, the allegations in the complaint make clear that decedents were in grave danger well before the UFD arrived on scene and prior to any private third-party's attempted rescue. Even assuming, arguendo, that defendants' affirmative conduct created or increased the danger to decedents, such conduct does not amount to conscience-shocking behavior. Defendants faced a time-sensitive emergency and had to decide between competing safety obligations to decedents, bystanders, and fire personnel. Plaintiffs cannot seriously contend that stopping an untrained and ill-equipped private citizen from running into a burning building shocks the contemporary conscience.

The factual allegations distinguish this matter from Ross, which involved a child who had fallen into Lake Michigan. 910 F.2d at 1424. On-duty emergency personnel—including

---

(...continued)
   affirmative obligation to provide an adequate alternative means of rescue.

   [8] Plaintiffs do not suggest defendants had any part in starting the fire in the residence on September 20, 2009. Further, to the extent plaintiffs imply that defendants' failure to enforce the applicable City codes created or enhanced the danger to decedents, such conduct is clearly passive and therefore cannot support a substantive due process claim. See Matican, 524 F.3d at 157.

- 13 -

two lifeguards, two firefighters, and one police officer—promptly responded to the scene with rescue equipment. Id. Two nearby civilian scuba divers also offered assistance as well as the use of their boat and equipment. Id. However, before the responders could commence a rescue, a deputy sheriff arrived in a patrol boat and enforced a county policy preventing anyone except members of a local fire department dive team from attempting a rescue on the lake. Id. at 1424–25. The deputy ordered all personnel to cease any rescue efforts, threatened to arrest the civilian scuba divers, and even positioned his boat to prevent them from entering the water. Id. at 1425. The child ultimately died. Id.

The United States Court of Appeals for the Seventh Circuit, viewing the factual allegations in the light most favorable to the plaintiff, deemed the Ross case "a stunning abuse of governmental power." Id. at 1424. The court reinstated the substantive due process claim, noting that "unauthorized persons on the scene could have saved [the child]'s life" and holding that the county's policy was arbitrary and unconstitutional. Id. at 1429–30.

Conversely, members of the UFD physically restrained a private citizen "who had entered the Property from the rear door wearing only a tee shirt and shorts and who was without the aid of any breathing apparatus" in a building that was "consumed by fire." Compl. ¶¶ 55, 36. The assertion that this citizen could have successfully rescued four people trapped in four separate apartments in a burning building is, again, completely speculative. There was no abuse of governmental power comparable to that alleged in Ross. In short, and as a matter of law, defendants' conduct was neither egregious nor outrageous.

Accordingly, defendants' motion to dismiss will be granted with respect to plaintiffs' substantive due process claim.

### 4. Equal Protection (Second Cause of Action)

Plaintiffs allege that defendants discriminated against decedents based on socio-economic status and selectively withheld protective services because decedents lived in a low-income neighborhood. Defendants maintain that this claim must be dismissed because there are insufficient allegations of discrimination or, in the alternative, their conduct was rationally related to a legitimate government purpose.[9]

As explained above, there is no constitutional entitlement to protective services from the government. DeShaney, 489 U.S. at 195–96, 109 S. Ct. at 1003. However, "[t]he State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." Id. at 197 n.3, 109 S. Ct. at 1004 n.3 (citing Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064 (1886)). To prevail on an equal protection claim in this context, a plaintiff must establish that "discriminatory intent was a motivating factor" for defendants' conduct. Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 438 (2d Cir. 2009) (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265–66, 97 S. Ct. 555, 563 (1977)). This requires a showing "that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Eagleston v. Guido, 41 F.3d 865, 878 (2d Cir. 1994) (quoting Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296 (1979)).

In other words, the Equal Protection Clause bars the "selective adverse treatment of

---

[9] Defendants also maintain that plaintiffs have failed to state a "class of one" equal protection claim. Plaintiffs did not respond to this assertion and do not pursue such a claim. Plaintiffs instead allege that they are members of a specific socio-economic class that received a different, and lesser, level of protective services than residents of more affluent neighborhoods.

individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks omitted). This protects citizens from "adverse governmental action that is not motivated by legitimate governmental objectives." Id. at 87.

Defendants' assertion that plaintiffs have failed to sufficiently allege a discriminatory purpose is without merit. Plaintiffs specifically claim that defendants purposely and maliciously withheld protective services from decedents because they lived in a low-income neighborhood. Plaintiffs further claim that defendants "adhered to a 'don't go in policy' for all fires which took place at low-income properties located in the City of Utica." Compl. ¶ 73. Chief Brooks allegedly evidenced this discriminatory intent by advising bystanders at the fire scene that he "was not going to risk the lives of any members of the Department for individuals who resided on James Street." Id. ¶ 52. Plaintiffs also allege that defendants failed to adequately investigate the cause of the fire, and the UFD's response thereto, due to similar discriminatory animus.

Taking such factual allegations as true and making all reasonable inferences in favor of plaintiffs for purposes of the motion to dismiss, plaintiffs have sufficiently alleged that defendants selectively withheld government services simply because decedents lived in a low-income neighborhood as opposed to a more affluent area.[10] While discovery may ultimately undermine plaintiffs' allegations and prove true defendants' assertion that their

---

[10] Although not specifically alleged in the complaint, it is assumed for purposes of the motion to dismiss that the residence was located in a low-income neighborhood in Utica.

conduct was not malicious but instead related to legitimate government objectives, such a legal finding is premature at this stage of the litigation.

Accordingly, defendants' motion to dismiss will be denied with respect to plaintiffs' equal protection claim.

### 5. Monell Claim (Third Cause of Action)

Defendants' sole argument in favor of its motion to dismiss the Monell claim against the City is that there are no underlying constitutional violations for which the City can be held liable. However, as discussed immediately above, plaintiffs have stated a plausible equal protection claim that will survive the motion to dismiss. Further, plaintiffs specifically allege that the City and Chief Brooks failed to properly supervise and train City employees, and implemented practices and/or policies through which the UFD refused to adequately respond to fires in low-income areas due to discriminatory animus. Plaintiffs claim such practices and/or policies caused the deprivation of decedents' constitutional rights.

Accordingly, defendants' motion to dismiss the Third Cause of Action will be denied.

### 6. Qualified Immunity

Similarly, defendants maintain that Chief Brooks is entitled to qualified immunity because no constitutional violations occurred. However, as noted above, plaintiffs state a plausible equal protection claim. Moreover, defendants do not contend, nor could they, that the right to non-discriminatory administration of protective services was not clearly established as of September 2009.

Accordingly, Chief Brooks is not entitled to qualified immunity.

## C. Defendants' Rule 12(b)(7) Motion to Dismiss

Finally, defendants assert that the complaint must be dismissed pursuant to Rule

12(b)(7) because plaintiffs failed to join necessary parties. Specifically, defendants argue that the Klotzes are necessary parties as defined by Rule 19(a)(1) because their negligence contributed to decedents' injuries and deaths. This argument is misplaced. The only remaining claim in this action is the federal equal protection claim. The Klotzes, as private citizens, cannot be held liable for constitutional violations under § 1983 and would be dismissed if they had been named as defendants in this claim. See Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003) (§ 1983 claim requires a showing of state action). Therefore, "complete relief among existing parties" can be accorded in the absence of the Klotzes, and defendants' Rule 12(b)(7) motion will be denied. FED. R. CIV. P. 19(a)(1)(A).

## IV. CONCLUSION

All state claims brought by plaintiffs Bush, Crane, and Drake are time-barred. Plaintiff Hamilton lacks standing to assert any claims on behalf of Terry Singh's estate and children. Plaintiffs fail to state a plausible substantive due process claim as there is no constitutional right to adequate fire protection services and defendants' conduct was not conscience-shocking. However, plaintiffs state a plausible equal protection claim that defendants selectively withheld government services due to a discriminatory animus based on decedents' socio-economic status. This discrimination was allegedly implemented by defendants through the policies, practices, supervision, and training as set forth in the Monell claim.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. The state claims (Fifth, Sixth, Seventh, and Eighth Causes of Action) are

DISMISSED with prejudice against all plaintiffs;

    3. The federal substantive due process claim (First Cause of Action) is DISMISSED with prejudice against all plaintiffs;

    4. The federal claims asserted by plaintiff Sharon Marie Hamilton (Second, Third, and Fourth Causes of Action) are DISMISSED without prejudice;

    5. The federal equal protection, <u>Monell</u>, and attorneys' fees claims (Second, Third, and Fourth Causes of Action) asserted by plaintiffs Bush, Crane, and Drake against defendants City of Utica, New York, and Russell Brooks remain; and

    6. Defendants shall file an answer to the Second, Third, and Fourth Causes of Action on or before June 21, 2013.

    IT IS SO ORDERED.

                                            United States District Judge

Dated: June 4, 2013
       Utica, New York.

The Clerk of the Court is directed to remove the defendant City of Utica Fire Department and plaintiff Sharon Marie Hamilton from the caption, and these parties' names shall not be included in future submissions.